IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

TAYLOR W.,[1]

       Plaintiff,

  v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

       Defendant.

Case No. 6:23-cv-01075-HL

**OPINION AND ORDER**

_____

HALLMAN, United States Magistrate Judge:

Plaintiff Taylor W. brings this action under the Social Security Act (the "Act"), 42 U.S.C.

§ 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security

("Commissioner"). The Commissioner denied Plaintiff's applications for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II of the Act. 42 U.S.C.

§ 401 *et seq.* For the following reasons, the decision of the Commissioner is REVERSED and

REMANDED for further proceedings consistent with this Opinion and Order.

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name
for non-governmental parties and their immediate family members.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)*.* Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

## BACKGROUND

### I.    Plaintiff's Application

Plaintiff alleges disability based on schizophrenia, anxiety, and depression. Tr. 120-21.[2] At the time of his alleged onset date, he was 34 years old. Tr. 120. He has a limited education,

---

[2] Citations to "Tr." Are to the Administrative Record. ECF 11.

given the highest grade he completed is eighth grade. Tr. 32, 514. He has past relevant work as a cabinet maker, horizontal earth boring machine operator, and an asbestos abatement worker. Tr. 31-32.

Plaintiff protectively applied for DIB and SSI on May 14, 2020, alleging an onset date of February 1, 2019. Tr. 120. His applications were denied initially on August 14, 2020, and on reconsideration on May 21, 2021. Tr. 129, 140, 164, 186. Plaintiff subsequently requested a hearing, which was held on December 21, 2021, before Administrative Law Judge ("ALJ") Anne Sharrard. Tr. 74-119. A supplementary hearing was held on April 6, 2022. Tr. 41-73. Plaintiff appeared represented by counsel; VE Mary Everts and medical expert Dr. Laura Hopper also testified. Tr. 41. On April 29, 2022, ALJ Sharrard issued a decision denying Plaintiff's claim. Tr. 15-40. Plaintiff requested the Appeals Council to review ALJ Sharrard's decision, which was denied on June 1, 2023. Tr. 1-7. Plaintiff then sought review before this Court.[3]

## II.    Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful

---

[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 5).

activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## III.    The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his alleged onset date. Tr. 20.

At step two, the ALJ determined that Plaintiff has the following severe impairments: "schizoaffective disorder, depression, cannabis use disorder, and stimulant use disorder." Tr. 21.

At step three, the ALJ determined that Plaintiff's impairments, including Plaintiff's substance use, met the criteria of 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 12.03. *Id.* The ALJ then performed a Drug and Alcohol Abuse Analysis ("DAA analysis"). The ALJ found that if Plaintiff had stopped his substance use, the remaining limitations would have caused more than a minimal effect on his ability to perform basic work activities through the date last insured, and therefore he would continue to have a severe impairment or combination of impairments. Tr. 25. However, the ALJ then found that if Plaintiff had stopped his substance use, he would not have an impairment or combination of impairments that met or medically equaled a listing. *Id.* The ALJ then resolved that if Plaintiff had stopped his substance use, he would have the RFC to do a full range of work at all exertional levels but with the following nonexertional limitations:

> He could understand and carry out simple and routine instructions in a low-stress job, which is defined as having occasional changes in the work setting and occasional decision-making required. He could not perform fast-paced work, such as assembly-line work with strict production quotas, but he could perform goal-oriented work than can be completed by the end of the work shift. [Plaintiff] could have occasional interaction with supervisors, occasional, brief, and superficial interaction with co-workies, and no interaction with the general public. [Plaintiff] could have no exposure to hazards, including unprotected heights and exposed moving mechanical parts.

Tr. 27.

At step four, the ALJ found that in the absence of Plaintiff's substance abuse, he could not perform any of his past relevant work. Tr. 31.

But at step five—considering Plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that Plaintiff could perform, including work as a checker I, router, and garbage collector. Tr. 32. The ALJ concluded that through the date last insured, substance use disorder was a contributing factor material to the

disability determination because Plaintiff would not be disabled if he stopped his substance use. Tr. 31-33. Thus, the ALJ concluded that Plaintiff is not disabled. *Id.*

## DISCUSSION

Plaintiff argues the ALJ committed five errors: (1) improperly addressing Dr. Hopper's testimony and then concluding that Plaintiff's substance abuse was a contributing factor material to the disability determination; (2) improperly analyzing the medical opinion evidence; (3) failing to provide clear and convincing reasons to reject Plaintiff's symptom testimony; (4) failing to provide clear and convincing reasons to reject the lay witness' testimony; and (5) failing to include all of Plaintiff's limitations when posing questions to the VE.

## I.    DAA Analysis

Plaintiff first asserts that the ALJ improperly addressed critical aspects of Dr. Hopper's medical expert testimony, and as a result, found that substance abuse was a contributing factor material to the determination of disability without substantial evidence to support that finding. Pl.'s Opening Br. 7. The Court agrees and addresses both Dr. Hopper's medical expert testimony and the ALJ's DAA analysis in turn.

### A.    Legal Standards

If at any point during the five-step analysis a claimant is found to be disabled and there is medical evidence of drug and alcohol abuse, then the Commissioner must consider whether the claimant's substance abuse is a contributing factor material to the determination of disability. *Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007). "An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The key factor the Commissioner must examine in determining whether drugs or alcohol are a contributing factor to the claim is whether the

claimant would still be disabled if they stopped using drugs or alcohol. 20 C.F.R. §
416.935(b)(1). The ALJ must evaluate which of plaintiff's current physical and mental
limitations would remain if plaintiff stopped using drugs and alcohol, and then determine
whether any or all of plaintiff's remaining limitations would be disabling. *Id.*

The ALJ must first conduct the five-step inquiry without separating out the impact of
alcoholism or drug addiction. *Bustamante v. Massanari,* 262 F.3d 949, 955 (9th Cir. 2001). If the
ALJ first finds that the claimant is disabled and substance abuse is a material factor in the
disability claim, then the ALJ proceeds to the DAA analysis to make a determination as to
whether the claimant would still be found disabled if they stopped their substance abuse. 20
C.F.R. § 416.935(b)(1). If so, then the substance abuse is not a contributing factor material to the
finding of disability. *Id.* § 416.935(b)(2)(ii). If, however, the claimant's impairments would not
be disabling if they stopped their substance abuse, then the substance abuse is a contributing
factor material to the finding of disability. *Id.* § 416.935(b)(2)(i).

The ALJ reviews the medical evidence and, if necessary, consults with a medical expert,
in determining what limitations, if any, would remain if the claimant stopped using drugs or
alcohol. 20 C.F.R. § 416.927(f)(2)(iii). "To support a finding that DAA is material, we must have
evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s)
would not be disabled in the absence of DAA. Unlike cases involving physical impairments, we
do not permit adjudicators to rely exclusively on medical expertise and the nature of a claimant's
mental disorder." Social Security Ruling ("SSR") 13-2p. The ALJ must have "objective medical
evidence—that is, signs, symptoms, and laboratory findings—from an acceptable medical
source" to make a finding that a claimant is abusing drugs or alcohol. SSR 13-2p(8)(b)(i). The
ALJ must project the severity of a claimant's other impairments in the absence of DAA, and, in

making this determination, the ALJ should consider medical judgments about the likely

remaining medical findings and functional limitations the claimant would have in the absence of

DAA. *David M. v. Comm'r of Soc. Sec.*, No. 2:18-CV-0035-JTR, 2019 WL 544954, at *3 (E.D.

Wash. Feb. 11, 2019).

 An ALJ must provide sufficient explanation to allow a reviewing party to conduct a

meaningful review. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a

reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection"

of certain evidence); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th

Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some

reasoning in order for us to meaningfully determine whether the ALJ's conclusions were

supported by substantial evidence.").

### B. Dr. Hopper's Testimony

 Plaintiff has a history of methamphetamine and marijuana abuse. Although Plaintiff's

accounts of his methamphetamine use are inconsistent, the record shows that Plaintiff's

methamphetamine use likely stopped in November 2020. Tr. 60-61 Plaintiff still uses marijuana,

but there was a brief period of sobriety from April 2021 to August 2021. Tr. 63 (citing Tr. 1003-

1084).

 Dr. Hopper testified at the supplementary hearing as a medical expert assessing

Plaintiff's mental health limitations. Tr. 57-66. She testified that Plaintiff's schizophrenic

spectrum disorder would meet the requirements of Listing 12.03. Tr. 62-63. She opined that

Plaintiff would have mild to moderate limitations in understanding, remembering, and applying

information, and marked limitations in interacting with others, concentrating, persisting, or

maintaining pace, and adapting and managing himself. Tr. 63. Specifically, Dr. Hopper

explained that Plaintiff's marked limitation in adapting and managing himself was very similar

to the "C" criteria for Listing 12.03, and that he had minimal capacity to adapt to changes in his environment. Tr. 64. To support this conclusion, she discussed how Plaintiff does not leave his home very often, and he receives a significant amount of support from his mother to minimize changes in his environment. *Id.*

The ALJ asked Dr. Hopper if Plaintiff's limitations would be "different" if he stopped using drugs. Tr. 63. Dr. Hopper opined that there is not a long enough period of sobriety from marijuana use in the record to determine how Plaintiff would function if he abstained from using marijuana. *Id.* She stated that Plaintiff abstained from using marijuana for about a month and a half in 2021, and she explained this is not a "long enough timeframe to determine how [Plaintiff] would be functioning in terms of the absence of [marijuana] use." *Id.* Dr. Hopper emphasized that "it does take quite a while to get out of the system" and "for somebody who's been using [marijuana] for a long time, it would require the brain a minimum of six months if not longer than that, to return to a baseline level of functioning without drug use." *Id.*

### C.    The ALJ's findings

Given Plaintiff's substance abuse, ALJ first conducted the five-step inquiry without separating out the impact of drug and alcohol abuse. Tr. 20-25. At step three, the ALJ found that including Plaintiff's substance use, the severity of the Plaintiff's impairments met the criteria of Listing 12.03 (schizophrenia spectrum and other psychotic disorders). Tr. 21 ("*Including the claimant's substance use*, the severity of the claimant's impairments met the criteria of section 12.03."). The ALJ found that both the "paragraph a" and "paragraph b" criteria were satisfied. Tr. 21-22.

The ALJ then found that if Plaintiff stopped using drugs or alcohol that his limitations would no longer meet Listing 12.03. Tr. 25 ("*If the claimant stopped the substance use*, the remaining limitations . . . .). *Id.* The ALJ proceeded with the five-step analysis, concluding that

Plaintiff's limitations would not be disabling if he stopped his substance abuse. Tr. 25-33. (*If the claimant stopped the substance use*, the claimant would not have an impairment. . . .”); Tr. 25-27 (*[I]f the claimant stopped the substance use,* the claimant has had the residual functional capacity. . . .). Tr. 27.

The ALJ found Dr. Hopper's opinion persuasive when considering Plaintiff's substance use. Tr. 23. The ALJ “adopted Dr. Hopper's opinion in finding that, including substance abuse, [Plaintiff's] impairments meet the requirements of Listing 12.03.” *Id.* The ALJ explained that Dr. Hopper's “opinion is supported by the medical evidence of record, which shows that the longest period of sobriety for [Plaintiff] was a few months in 2021.” *Id.*

However, the ALJ did not address Dr. Hopper's testimony that Plaintiff has not abstained from using marijuana long enough to determine how his limitations would differ if he stopped his substance use. Instead, to support the contention that Plaintiff would not be disabled if he stopped substance abuse, the ALJ discussed how Plaintiff abstained from using marijuana from April 2021 to August 2021 and reported “some improvement.” Tr. 25 (citing Tr. 1027, 1031). Specifically, the ALJ acknowledged that while Plaintiff continued to experience hallucinations, he reported “some improvement.” *Id.* Without citing to the record, the ALJ asserted that Plaintiff has a “fairly good work history, as well as generally good functioning with regard to self-care and childcare.” Tr. 25.

The ALJ also found that Plaintiff's mental health limitations dropped from “marked” to “moderate” in the absence of substance abuse. The ALJ found that Plaintiff's limitations in interacting with others would be moderately limited in the absence of substance abuse. To support this conclusion, the ALJ mentioned that Plaintiff “testified that he went to the coast in 2021, and it was horrible because being around other people he did not know exacerbated his

psychosis. . . [h]owever, [Plaintiff] also reported going to the beach and finding shells with his son." Tr. 25-26 (citing Tr. 1020).

As for adapting and managing himself, the ALJ found that Plaintiff would be moderately limited if substance use was stopped. Tr. 26. Plaintiff indicated that he did not drive or manage his own medications. Tr. 52, 436-37. Plaintiff also reported receiving "a lot" of help when he has custody of his son. Tr. 108. Without citing to the record, the ALJ stated that "the record does not show that he required this degree of assistance during the period of sobriety." Tr. 26. The ALJ stated that Plaintiff "would have fewer psychotic symptoms, which would prevent him from requiring emergency room or inpatient treatment." *Id.*

Regarding his ability to concentrate, persist, and maintain pace, the ALJ concluded that Plaintiff would only be moderately limited if substance use was stopped. The ALJ found that "records throughout the relevant period show generally normal concentration and attention, despite abnormal thinking." *Id.* (citing Tr. 1003-1084). The ALJ also made a personal observation at the hearing and explained in her decision that Plaintiff did not seem to be responding to internal stimuli, nor did the medical expert observe present evidence of psychosis. *Id.*

Regarding Plaintiff's hallucinations, the ALJ acknowledged examples in the record where Plaintiff continued to have hallucinations while sober, but did not address the impact of his hallucinations when finding Plaintiff's substance use disorder was a contributing factor material to the disability determination. Tr. 26, 29-30. While Plaintiff admits that his delusions and hallucinations are more extreme when he uses drugs or alcohol and that medications help his symptoms, his providers continued to assess limitations that would render Plaintiff disabled, even while sober and medicated. Tr. 955-57, 1085-87, 1210-12.

### D.    Analysis

Overall, the ALJ failed to provide substantial evidence to support her conclusion that Plaintiff's limitations would not be disabled if he stopped his substance abuse.

Dr. Hopper's opinion, which the ALJ found persuasive, does not provide substantial evidence for the ALJ's finding that Plaintiff's schizophrenia would improve to the point of non-disability in the absence of substance use. As noted above, Dr. Hopper testified that there is not a long enough period of sobriety from marijuana use in the record to determine how Plaintiff would function if he abstained from marijuana use. Tr. 63. Consequently, Dr. Hopper did not offer an opinion as to Plaintiff's baseline level of functioning in the absence of substance abuse. Thus, the ALJ erred in relying on Dr. Hopper's opinion when finding Plaintiff would not be disabled if he stopped substance use.[4]

In addition, the ALJ made several findings concerning Plaintiff's functioning while sober, Tr. 26-32, but the ALJ either failed to cite to evidence in support of these findings or relied on examples that did not support the overall ALJ's conclusion as to Plaintiff's functioning while sober:

- The fact that Plaintiff cares for his child with "a lot" of assistance and was able to travel to the coast when someone drove him and managed his medications does not support the ALJ's conclusion that he would not have a marked limitation if he stopped his substance use.

- The ALJ's conclusory statement that mental status examinations during the period of sobriety do not support extreme social limitations was not supported by any specific citations to the record. Tr. 26 (citing Tr. 1003-1084).

---

[4] The Commissioner correctly asserts that "[t]here does not have to be evidence from a period of abstinence for the claimant to meet his or her burden of proving disability [if he stopped using substances]." SSR 13-2p, available at 2013 WL 621536, at *4. But when a medical expert opines that the period of sobriety was not long enough to determine the limitations, then the ALJ must reply on other evidence in the record to determine the claimant's limitations in the absence of substance abuse.

- The ALJ acknowledged examples in the record where Plaintiff continued to have hallucinations while sober, but ultimately ignored the impact of these "improved" hallucinations when conducting the DAA analysis. Tr. 26, 29-30.

- The ALJ failed to cite to any medical records that support her conclusion that if Plaintiff stopped using marijuana, his hallucinations would improve to a point that makes his drug use a contributing factor material to the disability determination.

In sum, the ALJ's findings regarding Plaintiff's limitations in the absence of substance abuse were not supported by substantial evidence, either from Dr. Hopper's testimony or other evidence in the record. As a result, the ALJ failed to provide substantial evidence to support her conclusion that Plaintiff would not meet Listing 12.03 if he stopped substance use.

## II.    Medical Opinion Evidence

Plaintiff argues that the ALJ improperly addressed critical aspects of the medical opinions given by Dan Williams, LPC; Erik Gantt, QMHP; Scott Alvord, PsyD; and Bridget Knight, ARNP, without providing legally adequate reasons for doing so. Pl.'s Opening Br. 7-15. As explained below, these opinions all relate to the ALJ's conclusion that Plaintiff would not be disabled if he stopped substance abuse. This Court agrees that the ALJ's rejection of these opinions was not supported by substantial evidence.

### A.    Standard of review

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v.*

*Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)- (3). The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(c)(b). The court must, moreover, consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

## C.    Dan Williams, LPC

Plaintiff's treating licensed professional counselor, Dan Williams, completed a medical source statement on September 21, 2021. Tr. 1485-88. LPC Williams opined that Plaintiff would

have Category IV[5] limitations in multiple areas. Tr. 955-57. LPC Williams opined that Plaintiff

would be absent from work five or more days per month due to his impairments, and he would

be off task more than thirty percent of the workday. Tr. 958. Based on VE's testimony, these

limitations assessed by LPC Williams would preclude competitive employment. Tr. 67-69.

The ALJ found LPC William's opinion "generally persuasive" when considering

Plaintiff's substance abuse. Tr. 23. However, the ALJ stated "although Mr. Williams may not

have explicitly considered [Plaintiff's] substance abuse in completing the form, his opinion is

consistent with the effects of marijuana use as documented in the record." *Id.* However, the ALJ

concluded that when Plaintiff's substance abuse is not considered, LPC William's opinion is

unpersuasive. Tr. 31.[6]

The ALJ erred in discrediting LPC Williams opinion when substance use is not

considered. The medical source statement explicitly instructs medical providers to omit

limitations that would go away if Plaintiff stopped using drugs and alcohol. Tr. 955. There was

no basis in the record for the ALJ to presume, as she apparently did, that LPC Williams failed to

follow this portion of the opinion. Further, the ALJ did not explain why she disregarded this

aspect of LPC William's opinion. Therefore, she mischaracterized the record stating by "Mr.

Williams may not have explicitly considered [Plaintiff's] substance abuse in completing the

---

[5] Category IV limitations are defined as precluding performances of the designated task for thirty percent of an eight-hour workday.

[6] In this same paragraph, the ALJ states that LPC Williams, QMHP Gantt, PMNHP Knight, and Dr. Alvord's opinions are all unpersuasive when considering Plaintiff's substance abuse, and the ALJ provides the same analysis for all of the opinions. Tr. 31.

form." Tr. 23.[7] Thus, the ALJ failed to proffer valid reasons supported by substantial evidence when discrediting LPC William's opinion.

### D.    Erik Gantt, QMHP

The ALJ's analysis of QMHP Gantt's opinion mirrors her analysis of LPC William's opinion. Much like LPC Williams, QMHP Gantt was provided the same medical source statement form, where he was explicitly instructed to not include limitations which would go away if Plaintiff stopped using substances. Tr. 1085. QMHP Gantt opined that Plaintiff would have an array of Category IV limitations. Tr. 1085-87. He also opined that Plaintiff would be absent from work at least five days each month and off task thirty percent of the workday due to his impairments. Tr. 1088. QMHP Gantt noted that he assessed these limitations primarily because of Plaintiff's ongoing visual and auditory hallucinations. *Id.* QMHP Gantt supplemented the medical source statement checkbox form with a written narrative statement. Tr. 1089. In the statement, QMHP Gantt wrote that Plaintiff has "exhibited profound barriers to competitive employment and managing his basic needs in his home life." *Id.* He explained that this is due to constant symptoms of schizophrenia including, intrusive negative voice hearing and visual hallucinations. QMHP Gantt explained that "the nature of [Plaintiff's] auditory and visual hallucination symptoms would make any kind of scheduled responsibility or activity related to employment or other work unpredictable at best and have led to concerns and distractions for employers and coworkers in the past." *Id.* QMHP Gantt ended his statement by writing that Plaintiff "has experienced little to no relief from his mental health symptoms through no fault of

---

[7] Furthermore, the ALJ's conclusory statement that LPC William's opinion is "extreme" is undeveloped, given she made no citations to the record nor described how LPC William's opinion is unsupported by Plaintiff's activities and clinical observations.

his own and would, in my clinical opinion, be unable to successfully maintain gainful employment." *Id.*

The ALJ found QMHP Gantt's opinion "generally persuasive" when considering Plaintiff's substance use. Tr. 23. However, the ALJ concluded that QMHP Gantt's opinion was unpersuasive if Plaintiff's substance abuse is not considered. Tr. 31. The ALJ used the same reasoning as he did for LPC Williams; therefore, this Court finds that the ALJ failed to offer valid reasons supported by substantial evidence when discrediting QMHP Gantt's opinion as well.

### E.    Bridgette Knight, PMNHP

PMNHP Knight completed a medical source statement form on December 16, 2021. Tr. 1210. The medical source statement form instructed her not to include any limitations which would go away if Plaintiff stopped using drugs and alcohol. Tr. 1210. PMHNP Knight opined that Plaintiff would have a multitude of Category IV limitations. Tr. 1210-12. She opined that Plaintiff would be absent from work more than five days each month. Tr. 1213. She explained that as a result of his intrusive auditory hallucinations, delusional beliefs, cognitive deficits, and psychotic symptoms, he would be off task for more than thirty percent of the workday. Tr. 1213.

The ALJ found PMNHP Knight's opinion unpersuasive. Making no citations to the record, the ALJ reasoned that Knight's opinion "was based on the assumption that [Plaintiff's] substance abuse was in sustained remission, which it was not, based on emergency room records from a few months earlier, as well as his testimony that he continues to use marijuana." Tr. 24.

The ALJ mischaracterized the record. PMNHP Knight indicated that Plaintiff's methamphetamine use was in sustained remission – she did not discuss Plaintiff's marijuana use. Tr. 1213. The record supports that Plaintiff's methamphetamine use stopped in November 2020, and PMNHP Knight was specifically instructed to not include limitations that would go away if

Plaintiff abstained from using drugs and alcohol. Tr. 1210. The ALJ's analysis of PMNHP Knight's opinion is undeveloped regarding Plaintiff's marijuana use, and her rejection of the opinion on the basis that Plaintiff continued to use marijuana was not supported by substantial evidence.

### F.    Scott Alvord, PsyD

Dr. Alvord conducted a neuropsychological evaluation on October 29, 2021, and November 8, 2021. Dr. Alvord also completed a medical source statement on December 16, 2021. Tr. 1137-40. Dr. Alvord diagnosed Plaintiff with Major Neurocognitive Disorder. Tr. 1135. Dr. Alvord explained that "a recent history of a motorcycle accident is considered contributory and possibly more long-term effect of chronic traumatic encephalopathy given head injuries during childhood/adolescence." Tr. 1135. Dr. Alvord stated that Plaintiff "appears to meet the criteria for Schizoaffective Disorder bipolar type." *Id.* He explained that "use of illicit substances and/or head trauma may precipitate initial psychotic processes but then do not remit once the person discontinues the use of substances." *Id.* Dr. Alvord stated that "a combination of psychiatric and neurocognitive deficits does lead [him] to believe that [Plaintiff] is significantly impaired. . . " in the domains identified in his medical source statement. Tr. 1135. Dr. Alvord opined that Plaintiff would have an array of Category IV limitations. Tr. 1137-39. He opined that Plaintiff would be absent five or more days of work per month due, and he would be off task more than thirty percent of the workday. Tr. 958.

The ALJ found Dr. Alvord's opinion unpersuasive. To support her conclusion, she explained that his opinion relied on testing that did not include measures of validity, and that "it is based primarily on neurocognitive impairments that have not yet been shown to have lasted for

a 12-month period." Tr. 24. Plaintiff asserts Dr. Alvord noted that "validity issues were not suspected" during the examination. Pl.'s Opening Br. 12 (citing Tr. 1132).[8]

The ALJ's rejection of Dr. Alvord's opinion based on the lack of validity measures used in the neuropsychological evaluation is, at best, underdeveloped. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Merely stating that Dr. Alvord failed to apply validity measures does not explain why the ALJ considered this to be a significant reason to doubt the results of the examination. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). The ALJ therefore failed to offer reasons supported by substantial evidence when discrediting this opinion.

## III.    Subjective Symptom Testimony

Plaintiff next asserts that the ALJ failed to provide clear and convincing reasons to reject his symptom testimony. Pl.'s Opening Br. 15-17. Again, this Court agrees.

### A.    Legal Standards

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony

---

[8] At the hearing, Plaintiff's counsel asked medical expert if she saw that Dr. Alvord diagnosed Plaintiff with major neurocognitive disorder. Tr. 65. Dr. Hopper acknowledged that Dr. Alvord believed that validity issues were not a problem. *Id.* However, Dr. Hopper explained that "validity measures were not administered despite the fact that there are built in validity measures within one of the tests that he administered" and she "do[es]n't know what reason he did not administer that given the circumstances." *Id.* Dr. Hopper acknowledged while it is possible that Plaintiff may have a major neurocognitive disorder, "without a solid validity measure in place, for such a gray in a forensic setting, it makes it very difficult to determine the validity of the results." *Id.*

about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan*, 246 F.3d at 1208. In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

### B.    Plaintiff's Testimony

At the hearing, Plaintiff testified that he does not have formal custody of his kids, and he has "come to an arrangement" with the children's mother as to when he has them in his care. Tr. 84-85. Plaintiff explained that when taking care of his two-year-old son, he does the "best [he]

can" and he has "lots of help." Tr. 86. Plaintiff stated he hardly is ever with his two-year-old by himself unless he absolutely has to, and that his mother and stepfather help him in caring for his son. *Id.* Plaintiff testified that he was let go from Alpine Abatement Associates and stated "I got real evil voices in my head and I was going to work at a school. And I just - - I couldn't take that into a school, so I couldn't make it to work that day and I got fired.' Tr. 91. The ALJ asked Plaintiff he was able to "work through" his auditory and visual hallucinations at Alpine Abatement Associates, and Plaintiff replied that he was not. Tr. 104. Plaintiff explained that this was his last employment, and he did not experience hallucinations in his earlier jobs as a cabinetmaker and tracker. Tr. 104-05.

Plaintiff testified about his substance abuse explaining that he didn't remember when he last used methamphetamine, but he knew it had "been a long while" and he clarified he hadn't used methamphetamine in years. Tr. 94. The ALJ asked Plaintiff if not using methamphetamine has made any difference in his impairments, and Plaintiff replied "no not at all. . . nothing's really made a difference for me. I hallucinate and hear voices constantly." Tr. 95. Plaintiff testified that his hallucinations "dramatically" affect everything he does all day.[9] Tr. 108. He explained that when he is hallucinating and hearing voices it doesn't matter where he looks or even if he closes his eyes, he still sees and hears the hallucinations. Tr. 55. He explained it affects him with his daily tasks and that's why he requires help caring for his son, and that "just doing the dishes is hard." Tr. 107-109.

---

[9] It is clear that Plaintiff's hallucinations severely affect him. At the hearing, the ALJ questioned Plaintiff about his probation in November of 2019. Tr. 95. Plaintiff explained that there was an incident where he experienced a hallucination where he could hear someone getting hurt, and when he went in the house to grab a phone and call for help, nobody would give him a phone. *Id.* Plaintiff testified that he then grabbed a gun and made them give him a phone, and as a result he went to jail. *Id*

Regarding his marijuana use, Plaintiff explained that he stopped using marijuana in the past and gave himself about 40 days to see how he did with his new medications. Tr. 94. Plaintiff testified that he started using marijuana again because "it helps [him] smile" and helps him be "able to be around [his] son and be happy." *Id.* Plaintiff testified that he does not go out in public unless he has an appointment. Tr. 110. He testified that the voices and hallucinations get worse when he is around people he does not know, and he fears strangers are always out to get him and his family. Tr. 110-11. He testified that he doesn't manage his own hygiene well because being in the shower is "really creepy," given that he hallucinates seeing people staring at him and commenting on him while he showers. Tr. 112.

The ALJ determined that his medically determinable impairments could reasonably be expected to produce some degree of symptoms, but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 27. Specifically, the ALJ discussed Plaintiff's treatment history and the objective medical evidence. Tr. 27-30. This Court addresses each rationale in turn.

### C.    Treatment History

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of ... symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit has held that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

Here, the ALJ provided a summary of the objective medical evidence and noted a few isolated instances of improvement. As noted above, an ALJ should consider the type and effectiveness of treatment in weighing the claimant's allegations. 20 C.F.R. § 404.1529(c)(3)(iv)-(v). The ALJ cited a single treatment note from January 2020, where Plaintiff admitted to doing better and reported that his medications were helpful, but he still had ongoing symptoms particularly with social functioning and psychosis. Tr. 28 (citing Tr. 655). The ALJ cited another treatment note from August 2020, where Plaintiff stated his hallucinations were much improved, but he observed worsening with stress. Tr. 29 (citing Tr. 638). Plaintiff also reported that his mood and anxiety were manageable, and he was able to "tune out his hallucinations," but he was struggling with insomnia. Tr. 29 (citing Tr. 748-51). The ALJ relied on a treatment note where Plaintiff reported switching is antipsychotic to an injection was working well, and that he was able to "ignore his daily auditory hallucinations. Tr. 29 (citing Tr. 707, 837-38). The ALJ also cited a consultative examination with Shari Engstrom, M.D. where Plaintiff's memory and concentration were described as "normal". Tr. 29 (citing Tr. 944-54).

The ALJ erred in relying on Plaintiff's isolated instances of improvement. In the context of mental health issues "[I]t is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017 (internal citation omitted). An ALJ may not select ". . . isolated instances of favorable psychological symptoms when the record as a whole reflects longstanding psychological disability." *Richard R. v.*

*Comm'r, Soc. Sec. Admin.*, 3:19-CV-00918-MK, 2020 WL 4193114, at *4 (D. Or. July 21, 2020) (citing *Ghanim v. Colvin,* 763 F.3d 1154, 1164 (9th Cir. 2014)).

Furthermore, Plaintiff's purported ability to "ignore" his hallucinations is not an adequate improvement in his symptoms that makes him fit for full-time employment. The hallucinations are still occurring and persist even when Plaintiff abstains from marijuana. Tr. 955-57, 1085-87, 1210-12. Plaintiff also reported that marijuana use was actually helping with his hallucinations, allowing him to sleep better, and share custody of his son. Tr. 624, 637. As already discussed throughout this opinion, the record as a whole indicates persistent and severe psychological issues.

The ALJ also rejected Plaintiff's subjective symptom testimony regarding Plaintiff's noncompliance with abstaining from marijuana and methamphetamine. Tr. 28-29. An ALJ may rely on a claimant's non-compliance with treatment to discount her testimony regarding the intensity or persistence of symptoms. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). However, if a claimant offers a good reason for non-compliance with treatment, then the non-compliance is not a clear and convincing reason to reject her testimony. *See Smolen*, 80 F.3d at 1285. In the context of serious mental health issues, "it is a questionable practice to chastise one with a mental impairment for exercising poor judgment in seeking rehabilitation. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 2007) (citation omitted).

Here, numerous providers advised Plaintiff to abstain from marijuana due to the risk of psychosis. Tr. 657, 794, 891. However, "it is a common phenomenon for individuals with significant mental health problems to use drugs to self-medicate, and again, the exercise of poor judgment in using illicit drugs in the first place is indicative of the poor judgment associated with mental impairments." *Jack W. v. Comm'r*, No. 3:19-CV-00507-CL, 2021 WL 879043, at *16 (D.

Or. Mar. 9, 2021). Several treating sources documented that Plaintiff's mental health symptoms remained largely unchanged whether Plaintiff was using marijuana or not, which is consistent with his subjective symptom testimony. Tr. 955-57, 1085-87, 1210-12. As already discussed, when providing the medical opinions, the providers were explicitly asked only identify impairments that would remain if Plaintiff stopped his substance abuse. Tr. 955, 1085, 1210. The medical opinions from LPC Williams, QMHP Gantt, and FRNP Knight are consistent with Plaintiff's testimony. To the extent the ALJ disregarded Plaintiff's symptom testimony on his inconsistent reports about drug use and his non-compliance with treatment, her rationale is not supported by substantial evidence.

### E.    Objective Medical Evidence

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). In sum, "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (quoting *Burch*, 400 F.3rd at 681)).

The ALJ's analysis of the objective medical evidence includes an extensive summary of Plaintiff's treatment records and how they coincide with his substance abuse, and improvement with treatment. The ALJ concluded that "the record as a whole is consistent with a finding that drug use affects [Plaintiff's] ability to perform work-related activities and that, conversely, the absence of drug use would improve his functioning to the extent that he could perform simple, routine, low-stress, non-production-rate work with social limitations." Tr. 27.

The ALJ proceeded to summarize the medical evidence in detail, illustrating the waxing and waning of Plaintiff's mental impairments. Tr. 27-30. The ALJ discussed how in November 2019, outside the relevant period, Plaintiff initially established care with Rita Goehring, F.N.P. Tr. 27 (citing Tr. 911-915). The ALJ mentioned that Ms. Goehring advised Plaintiff that drug use would "hinder" his ability to improve his functioning. Tr. 27 (citing Tr. 911-915). The ALJ also discussed how in November 2019, Plaintiff was evaluated by Dr. Albert Lilly for left-eye vertical strabismus and headaches, and he advised Plaintiff to stop using methamphetamine. Tr. 27-28 (citing Tr. 517-19). Plaintiff reported to Dr. Lilly that he had last used methamphetamine a few days earlier. *Id.* The ALJ noted that despite the advice from providers, Plaintiff presented to the emergency room for psychosis, drug abuse, and hallucinations with persecutory delusions and moments of grandiosity. Tr. 28 (Tr. 506-19).

The ALJ also relied on a behavioral health assessment from November 2019 where Martin Gillette, L.C.S.W. screened Plaintiff for schizophrenic disorders. L.C.S.W. Gillette reported that his substance abuse could not be ruled out as a contributing factor the Plaintiff's psychosis. Tr. 28 (citing Tr. 682-85, 687-88). The ALJ discussed LPC William's treatment notes from December 2019 to February 2021. Tr. 28-29. In December 2019, Plaintiff had an initial appointment with LPC Williams where his insight and judgment were noted to be poor, and

Plaintiff admitted he had been trying to "cut back" on methamphetamine but had used it a few days earlier. Tr. 28 (citing Tr. 665-68). The ALJ discussed that at the initial appointment, Plaintiff's "mental status examination was normal except for hallucinations and delusions, with depressed mood and congruent effect." *Id.* The ALJ explained that during the relevant period from January 2020 to June 2020, Plaintiff saw LPC Williams for a few appointments, during which "he usually appeared engaged and receptive, but was sometimes somewhat disengaged and apathetic." *Id.* (citing Tr. 619-20, 627-30, 634-35, 639-47, 655-56).

The ALJ discussed how in January 2020, Plaintiff admitted to doing better and he reported that his medications were helping. The ALJ acknowledged that despite "doing better," Plaintiff "still had some ongoing symptoms, particularly with social functioning and psychosis." *Id.* (citing Tr. 655). The ALJ discussed how during this same period, Plaintiff was using marijuana nightly for sleep, despite being advised not to combine marijuana with his medications due to the risk of psychosis. *Id.* (citing Tr. 657). The ALJ acknowledged Plaintiff's report that marijuana use was actually helping with his hallucinations, allowing him to sleep better, and share custody of his son. Tr. 29 (citing Tr. 624, 637).

The ALJ discussed medical records from a medication management appointment in August 2020. *Id.* (citing Tr. 748-51). Plaintiff told providers that he was still using marijuana daily but that he had only used methamphetamine once in the last year. *Id.* (citing Tr. 723-30). Plaintiff reported that his mood and anxiety were manageable, but he was struggling with insomnia. *Id.* (citing Tr. 748-51). He also reported that he was still having auditory hallucinations but he was able to "tune them out." *Id.*

The ALJ discussed medical records from July 2020 to February 2021 and explained that Plaintiff "was somewhat apathetic and lethargic at times, although he admitted that medications

helped somewhat, and he said that he was keeping busy building things." *Id.* (citing Tr. 698-99,

705-06, 716-17, 731, 739-47, 751-52, 837-38). The ALJ discussed how in January 2021, Plaintiff

reported that he was "keeping busy and distracting himself helped combat the hallucinations." *Id.*

(citing Tr. 699). The ALJ acknowledged that Plaintiff also reported he was struggling with

psychosis and hygiene. *Id.* The ALJ again acknowledged that in October 2021, Plaintiff's drug

use was in remission, and he reported hearing voices daily, but his medication made it easier to

ignore them. *Id.* (citing Tr. 1082).

      Overall, this summary of the medical evidence is not a specific, clear, and convincing

reason for rejecting Plaintiff's subjective symptom testimony. Providing a summary of medical

evidence ... is not the same as providing clear and convincing *reasons* for finding the claimant's

symptom testimony not credible." *Lambert v. Saul*, 980 F.3d 1266, 1277-78 (9th Cir.

2020) (quoting (*Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)) (emphasis in

original). By merely providing a summary of the medical evidence, the ALJ failed to link the

particular parts of the record supporting she found non-credible to the parts of the record

supporting her non-disability determination. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th

Cir. 2015) (an ALJ must "link" the testimony they find not credible "to the particular parts of the

record supporting [their] non-credibility determination"). This "falls short of meeting the ALJ's

responsibility to provide a discussion of the evidence and the reason or reasons upon which his

adverse determination is based.") *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103

(9th Cir. 2014) (internal quotation marks omitted).

      In sum, the ALJ failed to provide specific, clear and convincing reasons for rejecting

Plaintiff's subjective symptom testimony.

**IV.    Lay Witness Testimony**

Plaintiff contends that the ALJ improperly discounted lay witness testimony from his mother, Debra C., Pl.'s Opening Br. 17, which was contrary to the standard that an ALJ must provide "germane" reasons for discounting lay witness testimony. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The Court agrees.

Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" to reject such testimony. *Id*. (citation and internal quotation omitted). However, failure to discuss or weigh third-party testimony is harmless where the ALJ validly discounts similar evidence. *See id*. at 1118-19 (ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited").

Debra C. completed a questionnaire describing Plaintiff's mental limitations. She noted that Plaintiff lives in a trailer on her property, and she helps cares for his son. Tr. 435-36. She indicated that Plaintiff needs reminders to shower and that she manages his medications. Tr. 436-37. Debra C. described Plaintiff's auditory and visual hallucinations in detail, explaining that they occur every day and are very distracting. Tr. 440. She explained that his auditory hallucinations seem more severe when loud noises are present such as power tools. Tr. 435-36. She stated that when Plaintiff is in the shower, she can hear him yelling at "the voices." *Id.* She stated that stress makes his hallucinations worse, and he has visual hallucinations of writing on the walls. Tr. 443. She stated that Plaintiff will think he hears someone screaming for help and

attempt to rescue them. Tr. 440-41, 443. When describing his abilities, she explained that

Plaintiff is often not able to finish tasks he starts, and his hearing, memory, and ability to get

along with others are affected by his condition. Tr. 440, 443.

The ALJ's analysis of Debra C.'s lay witness testimony mirrors his analysis of the other

issues. The ALJ found the lay witness testimony was generally persuasive when considering

Plaintiff's substance abuse. Tr. 24. However, the ALJ concluded in the absence of substance

abuse, Debra C.'s lay witness testimony is unpersuasive. Tr. 31. The ALJ supported this

contention by giving a conclusory statement making no citations to the record. *Id.* Specifically,

the ALJ stated "although it is unlikely that her involvement in his life changed much during this

period, the record does show some improvement in the absence of substance abuse and,

significantly, consistent warnings that substance abuse would worsen [Plaintiff's] symptoms."

*Id.* As already explained throughout this opinion, the ALJ ultimately failed to discredit the lay

witness testimony with specific citations to the record, and these conclusory statements are not to

be considered as substantial evidence.

The Commissioner asserts that Plaintiff's challenge to the ALJ's evaluation of the lay

witness testimony "fails" because the reports largely mirrored Plaintiff's testimony and the ALJ

provided legally valid reasons supported by substantial evidence to reject Plaintiff's symptom

allegations. Def.'s Br. 16, citing *Molina*, 674 F.3d at 1122. This Court agrees that the reports

largely mirrored Plaintiff's testimony; however, because the ALJ's rejection of plaintiff's

symptom testimony was not supported by substantial evidence, this Court cannot conclude that

the ALJ's error in evaluating the lay witness testimony was harmless.[10]

---

[10] Plaintiff's final assignment of error is that the ALJ did not include all of Plaintiff's
impairments when posing hypothetical questions to the vocational expert. Pl.'s Opening Br. 19.
Because the ALJ's DAA analysis was not supported by substantial evidence, this Court need not

V.    **Remedy**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to

remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210.

Although a court should generally remand to the agency for additional investigation or

explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v.*

*Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). As relevant here, the

Court may only remand for payment of benefits where "the record has been fully developed and

further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at 1020.

In conducting this analysis, the district court first determines whether the ALJ made a legal error

and then reviews the record as a whole to determine whether the record is fully developed, the

record is free from conflicts and ambiguities, and whether there is any useful purpose in further

proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015).

Plaintiff asserts that this Court "should reverse the Commissioner's decision, find that

Plaintiff is disabled, and order the agency to award benefits." Pl.'s Opening Br. 20. Plaintiff

asserts "only as a lesser alternative this Court should reverse the agency's decision and remand

this matter for further proceedings. *Id.* This Court need not engage in a detailed discussion of the

credit-as-true standard because "Plaintiff has not meaningfully argued that remand for an

immediate award of benefits is appropriate here." *Marshall M. v. Comm'r Soc. Sec. Admin.*, No.

3:23-CV-00039-SB, 2024 WL 2317386, at *9 (D. Or. May 22, 2024); *see Alicia D. v. Kijakazi*,

No. 3:20-cv-01222-SB, 2022 WL 891786, at *11 (D. Or. Mar. 3, 2022) ("The Court must

remand this case for further proceedings because Plaintiff has not met the credit-as-true standard

---

address whether the ALJ included all of Plaintiff's limitations in his RFC. Nevertheless, the ALJ
will need to reformulate the RFC after conducing a new DAA analysis.

(as she appears to acknowledge by not briefing the issue)."), *findings and recommendation adopted*, 2022 WL 888297 (D. Or. Mar. 25, 2022).[11] Instead, this Court concludes there are ambiguities in the record regarding how Plaintiff's limitations would differ if he abstained from using marijuana, and further proceedings would serve a useful purpose.

On remand, the ALJ must (1) conduct a new DAA analysis supported by substantial evidence, (2) accept the medical opinions or provide legally sufficient reasons for rejecting them, (3) accept Plaintiff's testimony and the lay witness testimony, or provide legally sufficient reasons for rejecting it, (4) review any new evidence, and (5) as necessary, reweigh the medical and other evidence of record, reformulate Plaintiff's RFC, and obtain additional VE testimony.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the decision of the Commissioner is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 4th Day of December, 2024.

_____
ANDREW HALLMAN
United States Magistrate Judge

---

[11] In Reply, Plaintiff argues that the credit-as-true standard is met because of the four opinions from treating and examining providers, Plaintiff's testimony, and lay witness testimony. Pl. Reply at 11. Even if this Court were to consider such arguments raised for the first time in Reply, these conclusory assertions are insufficient to demonstrate that the credit-as-true standard is met, particularly given the complexity of the DAA analysis in this case.